UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

RYAN CARPENTER,

                Plaintiff,

v.

OTTAWA COUNTY JAIL et al.,

                Defendants.

_____/

Case No. 1:18-cv-116

Honorable Robert J. Jonker

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint against all Defendants for failure to state a claim.

## Discussion

I.      Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Michigan.  The events

about which he complains, however, occurred at the Ottawa County Jail in West Olive, Michigan. During Plaintiff's stay at the jail, on August 13, 2016, he slipped in a puddle of water and fell. He alleges that the puddle was there because of a leak in the roof. Plaintiff injured his back in the fall and continues to suffer pain.

Plaintiff sues the Ottawa County Jail, Ottawa County Sheriff's Deputy Glenn Barr, and Ottawa County Sergeant Deputy Jessica Bowyer. Plaintiff alleges that when Defendant Barr was told of the leak he stated "I'll put in a work order for it." Plaintiff alleges that he brought the leak to Defendant Bowyer's attention and she stated: "I wouldn't doubt it." Plaintiff describes the conduct of Defendants as neglectful and negligent. He claims there should have been a "wet floor" sign posted. He contends he was "housed in an unsafe living condition." (Comp., ECF No. 1, PageID.3.) The county replaced the entire roof within three months of Plaintiff's accident. (Grievance Response, ECF No. 1-1, PageID.12.)

Plaintiff seeks money damages for his injuries. (*Id.*, PageID.4.)

II.   Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff does not reference any particular constitutional right. Plaintiff's allegations that Defendants failed to provide a safe environment, however, implicates Plaintiff's rights under the Eighth (or perhaps Fourteenth) Amendment.

Plaintiff does not explain the circumstances that prompted his detention at the Ottawa County Jail. The Eighth Amendment's protections apply specifically to post-conviction inmates. *See Barber v. City of Salem, Ohio*, 953 F.2d 232, 235 (6th Cir. 1992). The constitutional limits on the conditions of pretrial detention, however, are provided by the Due Process Clause of

the Fourteenth Amendment.  As the Supreme Court explained in *Bell v. Wolfish*, 441 U.S. 520 (1979):

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee.  For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law. . . .  Under such circumstances, the Government concededly may detain him to ensure his presence at trial and may subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution.

*Id*. at 535-36 (footnotes and citations omitted).  The Supreme Court noted that, at a minimum, under the Fourteenth Amendment Due Process Clause, "pretrial detainees, who have not been convicted of any crimes, retain at least those constitutional rights that we have held are enjoyed by convicted prisoners." *Id*. at 545.  Thus, under the Fourteenth Amendment, pretrial detainees would be protected from the deliberate indifference to inmate health and safety that the Eighth Amendment prohibits.  *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985); *see also Thompson v. County of Medina, Ohio*, 29 F.3d 238, 242 (6th Cir. 1994) ("[Pretrial] detainees are thus entitled to the same Eighth Amendment rights as other inmates."); *Richko v. Wayne Cty.*, 819 F.3d 907, 915 (6th Cir. 2016) ("The [deliberate indifference] analysis set forth in *Farmer* [*v. Brennan*, 511 U.S. 825 (1994)], although rooted in the Eighth Amendment, therefore applies with equal force to a pretrial detainee's Fourteenth Amendment claims."); *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988) (stating that alleged violation of pretrial detainee's Eighth and Fourteenth Amendment rights is governed by the "deliberate indifference" standard).

III.    <u>Ottawa County</u>

Plaintiff sues the Ottawa County Jail. The jail is a building, not an entity capable of being sued in its own right. However, construing Plaintiff's *pro se* complaint with all required liberality, *Haines*, 404 U.S. at 520, the Court assumes that Plaintiff intended to sue Ottawa County.

A municipality, such as Ottawa County, may only be liable under § 1983 when its policy or custom causes the injury, regardless of the form of relief sought by the plaintiff. *Los Angeles Cnty. v. Humphries*, 131 S. Ct. 447, 453-54 (2010) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1974)). In a municipal liability claim, the finding of a policy or custom is the initial determination to be made. *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996). The policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving,* 330 F.3d 802, 815 (6th Cir. 2003); *Doe*, 103 F.3d at 508-509. It is the court's task to identify the officials or governmental bodies which speak with final policymaking authority for the local government in a particular area or on a particular issue. *McMillian v. Monroe Cty.*, 520 U.S. 781, 784-85 (1997).

In matters pertaining to the conditions of the jail and to the operation of the deputies, the sheriff is the policymaker for the county. MICH. COMP. LAWS § 51.75 (sheriff has the "charge and custody" of the jails in his county); MICH. COMP. LAWS § 51.281 (sheriff prescribes rules and regulations for conduct of prisoners); MICH. COMP. LAWS § 51.70 (sheriff may appoint deputies and revoke appointments at any time); *Kroes v. Smith*, 540 F. Supp. 1295, 1298 (E.D. Mich. 1982) (the sheriff of "a given county is the only official with direct control over the duties, responsibilities, and methods of operation of deputy sheriffs" and thus, the sheriff "establishes the

policies and customs described in *Monell*").  Thus, the court looks to the allegations in plaintiff's complaint to determine whether plaintiff has alleged that the sheriff has established a policy or custom which caused plaintiff to be deprived of a constitutional right.

Plaintiff's action fails at this first step because his allegations have not identified a policy or custom.  A "policy" includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the sheriff.  *Monell*, 436 U.S. at 690.  Plaintiff has not asserted that there is an official policy.  The Ottawa County Jail is a modern facility constructed within the last 25 years.  There is no reason to suspect it is in particular disrepair.  Indeed, as soon as Plaintiff brought the alleged defect to the attention of Defendant Barr, he took steps to repair the problem.  Plaintiff also has not identified a custom.  The Sixth Circuit has explained that a "custom"

> . . . for the purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law.  In turn, the notion of "law" includes deeply embedded traditional ways of carrying out state policy.  It must reflect a course of action deliberately chosen from among various alternatives.  In short, a "custom" is a "legal institution" not memorialized by written law.

*Claiborne Cty.*, 103 F.3d at 507 (citations and quotations omitted).

Plaintiff's allegation appears to be that Ottawa County was negligent in maintaining its jail.  He does not allege that actions of the sheriff show that he had a custom of failing to act which resulted in the conduct that caused Plaintiff's injuries.  Plaintiff's allegation that the sheriff was negligent in his situation does not show that the sheriff took "a course of action deliberately chosen from among various alternatives."  *Claiborne Cty.*, 103 F.3d at 507.  Moreover, mere negligence in failing to take preventive measures is insufficient to show § 1983 liability.  *Molton v. City of Cleveland*, 839 F.2d 240, 246 (6th Cir. 1988).  In other words, allegations that there were negligent acts by the sheriff as the policymaker for Ottawa County, without a showing that the acts

were the result of a policy or custom, do not support liability under § 1983. *Molton*, 839 F.2d at 246. Thus, Plaintiff has failed to allege that the sheriff, as final policymaker for conditions of the jail and operations of the deputies, had a policy or custom that caused plaintiff to be deprived of a constitutional right. Where a plaintiff fails to allege that a policy or custom existed, dismissal of the action for failure to state a claim is appropriate. *Rayford v. City of Toledo*, No. 86-3260, 1987 WL 36283, at *1 (6th Cir. Feb. 2, 1987); *see also Bilder v. City of Akron*, No. 92-4310, 1993 WL 394595, at *2 (6th Cir. Oct. 6, 1993) (affirming dismissal of § 1983 action when plaintiff allegation of policy or custom was conclusory, and plaintiff failed to allege facts tending to support the allegation). Therefore, the Court will dismiss Plaintiff's action against Ottawa County because he has failed to state a claim upon which relief may be granted.

IV.     Defendants Barr and Bowyer

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

Plaintiff does not allege deliberately indifferent behavior on behalf of Defendants Barr and Bowyer. He claims they were neglectful and negligent. Deliberate indifference requires more than that. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[A] complaint that a physician has been negligent . . . does not state a valid claim . . . under the Eighth Amendment."); *see also Flanory v. Bonn*, 604 F. 3d 249, 254 (6th Cir. 2010) ("Deliberate indifference 'entails something more than mere negligence.'"); *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) ("[T]he deliberate indifference standard 'describes a state of mind more blameworthy than negligence . . . .'"); *Lamb v. Howe*, 677 F. App'x 204, 208 (6th Cir. 2017) ("Deliberate indifference is a higher standard than negligence . . . ."). Even a showing of gross negligence will not suffice to show deliberate indifference. *See, e.g., Broyles v. Correctional Medical Services, Inc.*, 478 F. App'x 971, 975 (6th Cir. 2012) ("To satisfy the subjective component, the defendant must possess a 'sufficiently culpable state of mind,' rising above negligence or even gross negligence and being 'tantamount to intent to punish.'").

Even stepping outside of the deliberate indifference analysis under the Eighth Amendment and considering Plaintiff's claim directly as a deprivation under the Due Process Clause of the Fourteenth Amendment, his allegation of negligence is insufficient to show the requisite state of mind. In *Daniels v. Williams*, 474 U.S. 327 (1986), the Supreme Court

determined that "mere lack of care . . . does not implicate the Due Process Clause of the Fourteenth Amendment." *Id*. at 334. The Court concluded that where the allegation is injury by negligence, "[w]hatever other provisions of state law or general jurisprudence [the plaintiff] may rightly invoke, the Fourteenth Amendment to the United States Constitution does not afford him a remedy." *Id*. at 336.

Moreover, courts have routinely rejected the argument that a wet floor as the result of a roof leak is a sufficiently serious risk to health or safety to give rise to an Eighth Amendment claim. *Bunton v. Correctional Corp. of America*, 286 F. App'x 242 (5th Cir. 2008); *Gilman v. Woodford*, No. Civ S-05-0337, 2006 WL 1049739 (E.D. Cal. Apr. 20, 2006); *Hunt v. Widup*, No. 2:07-cv-283, 2007 WL 4255810 (N.D. Ind., Nov. 28, 2007); *Williams v. Smith*, No. 1:12-CV-176, 2014 WL 840014 (M.D. Ga., Mar. 4, 2014); *Newton v. North Central Regional Jail*, No. 5:13cv76, 2014 WL 3572128 (N.D.W.Va. Jul. 18, 2014); *Shannon v. Vannoy*, No. , 2016 WL 1559583 (M.D.La. Apr. 18, 2016). Indeed, "federal courts . . . have frequently rejected constitutional claims arising from slip and fall accidents[,]" no matter what creates the slippery condition. *See Coleman v. Sweetin*, 745 F.3d 756, 764 and n.7 (5th Cir. 2014) (collecting cases); *see also Pyles v. Fahim*, 771 F.3d 403, 410 n.25 (7th Cir. 2014.) (collecting cases); *Reynolds v. Powell*, 379 F.3d 1028, 1031 (10th Cir. 2004) (collecting cases); *Lamb*, 677 F. App'x at 208 ("[T]he federal courts have nearly unanimously held that a 'slip and fall' without more, does not amount to cruel and unusual punishment.").

In short, Plaintiff has failed to allege the objective component of an Eighth Amendment claim—a sufficiently serious risk to his health or safety—or the subjective component of such a claim—deliberate indifference by these Defendants. Accordingly, his claim is properly dismissed.

**<u>Conclusion</u>**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that all Defendants will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:   February 27, 2018          /s/ Robert J. Jonker
                                    ROBERT J. JONKER
                                    CHIEF UNITED STATES DISTRICT JUDGE